IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 21, 2024

**STATE OF TENNESSEE v. EUGENE SMITH**

**Appeal from the Circuit Court for Montgomery County**
**No. 63CC1-2021-CR-591  William R. Goodman, III, Judge**

_____

**No. M2023-00367-CCA-R3-CD**

_____

Eugene Smith, Defendant, entered best interest pleas to two counts of attempted aggravated sexual battery with sentencing left open to the trial court.  Following a sentencing hearing, the trial court sentenced Defendant to an effective sentence of twelve years in confinement.  On appeal, Defendant argues the trial court erred in imposing the maximum sentence of six years on each count, imposing consecutive sentences, and denying alternative sentencing.  After reviewing the record and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and TOM GREENHOLTZ, JJ., joined.

Jessica F. Butler, Assistant Public Defender, Appellate Division (on appeal); Roger Nell, District Public Defender; and Crystal Myers Lewis, Assistant District Public Defender (at sentencing), for the appellant, Eugene Smith.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Robert J. Nash, District Attorney General; and Kimberly Lund, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual and Procedural History

In May 2021, a Montgomery County Grand Jury returned an eight-count indictment against Defendant, charging him with four counts of aggravated sexual battery of V.G.,[1] three counts of aggravated sexual battery of I.G., and one count of sexual battery of V.G. On May 23, 2022, Defendant entered negotiated best interest pleas to lesser-included offenses of Counts 1 and 5, attempted aggravated sexual battery, a Class C felony. The State agreed to dismiss the remaining counts; however, there was no agreement between the parties as to Defendant's sentence.

Proof at Defendant's guilty plea hearing and from Defendant's psychosexual evaluation submitted at the sentencing hearing showed that on February 5, 2021, V.G. told her mother, R.G., and R.G.'s fiancé, that Defendant touched her inappropriately multiple times between December 16, 2014 and July 19, 2016. V.G. was eight to ten years old during this period, and V.G.'s younger sister, I.G., was seven to nine years old. V.G. stated that she chose not to disclose these incidents earlier because she did not want to cause any trouble. Defendant was known to the victims as their "Uncle Turtle," but he was actually R.G.'s fiancé's uncle by marriage. Defendant lived with the victims for a period of three months but later lived with one of his older sisters.

In one incident, V.G. explained that Defendant came into the kitchen while she was cooking, groped her buttocks, and pushed her against the wall. V.G. pushed one hand away but Defendant placed the other on her chest. He then proceeded to touch her buttocks, her breasts, and moved his hand down to touch her "private part" over her clothes. She kicked Defendant and went under his arm. V.G. stated that he later placed two $5.00 bills through a hole in her window screen while placing his finger to his lips to make a "shush" gesture.

In another incident, Defendant came into the victims' shared room and touched V.G.'s chest. V.G. tried to escape to the corner of her bunk bed, but Defendant climbed the ladder and continued to inappropriately touch V.G. He put his hands underneath V.G.'s shirt and squeezed her chest before finally stopping. V.G. believed I.G., who was also in the room, was sleeping during the incident.

In a third incident, V.G. was in her bed but Defendant went under her pants this time and touched her vagina on top of her underwear. This incident occurred at a new residence, different from the one where the previous two incidents occurred. She stated she was

---

[1] It is this court's policy to protect the identities of sexual crime and underage victims. We will refer to the victims in this case, and their mother, by their initials to protect their privacy.

sleeping when Defendant touched her buttocks and vagina, both underneath and on top of her clothes. After Defendant rubbed her inappropriately, V.G. slapped his hand away.

V.G. also recalled an incident when Defendant stared at her for a long time and told her that she "looked good today." V.G. stated that I.G. told her that Defendant put his hand down I.G.'s pants while she was trying to sleep.

I.G. witnessed one of the incidents of Defendant's abuse of V.G.—she recalled seeing Defendant put his hands down V.G.'s pants and touch her inside her underwear. I.G. also stated Defendant touched her inside her pants and underwear on multiple occasions. She testified that while she was on the floor with V.G., Defendant touched her in that manner. I.G. also recalled an incident when Defendant called her into the bathroom, sat her on the sink, and touched her inappropriately. Defendant asked I.G. if she liked it, and she said no. Defendant then stopped.

After V.G. told her parents, they contacted the police. The investigating officer attempted to contact Defendant on March 17, 19, and 22, 2021. On March 23, 2021, Defendant returned the officer's call. On March 25, 2021, law enforcement officers responded to a cemetery where they found Defendant lying face down in the grass. Defendant had slit his wrists and throat with a box cutter, and was crying and stating that he wanted to die. One of Defendant's brothers informed police that Defendant attempted to kill himself because he knew he had an open rape case against him and had previously been to prison for rape. On September 7, 1983, Defendant was convicted of aggravated sexual battery for an incident on or about May 1, 1983, where Defendant sexually assaulted a nine-year-old male family member. He was paroled on November 16, 1984, on the condition that he attend counseling. Approximately six months later after he was paroled, Defendant sexually assaulted a six-year-old girl. He was convicted on March 14, 1986 and sentenced to thirty years in confinement, to be served consecutively to his first sentence. Defendant was released in 2007. On April 11, 2012, Defendant was convicted of violating the sex offender registry, and he was sentenced to serve two years on probation with a ninety-day jail term.

At the sentencing hearing, R.G. testified that her daughters knew Defendant as "Uncle Turtle." R.G. stated that before she learned why Defendant had been in prison, he had lived with her family and daughters "for about three months." At some point, R.G. learned that Defendant was a registered sex offender but said she was "naïve" to think Defendant could be around children. She stated that she "never would have thought" Defendant would abuse her daughters.

R.G. testified that V.G. was seventeen and I.G. was sixteen at the time of the hearing. R.G. explained that I.G. had many medical problems and had recently been

diagnosed with autism. She explained that I.G. had been on different medications on and off for years. She described I.G. as an "angry little girl" when she did not get her way, but R.G. could not say if her anger was from her medical conditions or Defendant's actions. As such, R.G. admitted this made it difficult to tell how Defendant's offenses affected I.G.

R.G. described V.G. as a "daddy's girl," and said that V.G. and her father talked about everything. R.G. explained that after Defendant's offenses, V.G. became withdrawn, and "her grades suffered a lot." V.G.'s friend encouraged her to tell her parents about Defendant. R.G. testified that they told the authorities after V.G. disclosed the abuse. R.G. explained that V.G. had gradually become more social again and improved her grades. She stated that Defendant deserved to go back to prison and that if a person had "been in prison that long, [he] should have learned the first time."

V.G. testified that she trusted Defendant before the abuse, but she "slowly" lost trust in him. Initially, V.G. said she was afraid to tell anyone about Defendant, but as she got older, she "finally understood what was going on," and decided that she needed to tell someone. She stated there were family fights after she disclosed Defendant's abuse, but family members then "finally" understood the situation. V.G. stated she was more cautious around people after Defendant's actions, and learned "signs" to identify those who could do her harm. V.G. stated that I.G. did not like to talk about anything involving Defendant. As did her mother, V.G. testified that Defendant needed "to go back to prison" and that if he was unable to "be around family," he should not be around anyone else.

Ms. Donna Curtsinger was Defendant's sister. She testified that Defendant did construction work with their older brothers. She also stated that Defendant was currently living with one of their older sisters, Mrs. Phyllis Sanford, and her husband. Ms. Curtsinger said that Defendant took care of Mrs. Sanford because she was very ill. Ms. Curtsinger explained that no children lived with the Sanfords and that any grandchildren who came over were supervised. She stated while Defendant likely had some learning disabilities, "he's very smart with his job." Ms. Curtsinger said she thought prison would not give Defendant the "support" he needed.

Ms. Curtsinger explained that Defendant was on medication and seeing a psychiatrist for counseling, though she was not sure what Defendant's mental state was at the time of sentencing. Ms. Curtsinger testified that she saw Defendant often, and her husband helped Defendant find a job when he got out of prison in 2007. She stated Defendant had good family support when he committed the offenses in this case.

The PSR indicated Defendant suffered from post-traumatic stress disorder (PTSD), but his "therapist offered a rule out for PTSD." The PSR and psychosexual evaluation also indicated Defendant suffered from unspecified depressive disorder, cannabis use disorder,

fading eyesight, arthritis, and chronic obstructive pulmonary disease (COPD); however, Defendant told the pre-sentence investigator that both his physical and mental health were "fair to good."

In his psychosexual evaluation, Defendant was given the "Bumby Scale," a self-report questionnaire that measures cognitive distortion in men who sexually assault others. Defendant endorsed the following statements as true:

- Some people are not "true" child molesters—they are just out of control and made a mistake.
- I think child molesters often get longer sentences than they really should.
- Sometimes child molesters suffer the most, lose the most, or are hurt the most as a result of a sexual assault on a child, more than the child suffers, loses, or is hurt.
- Children who have been involved in sexual activity with an adult will eventually get over it and get on with their lives.
- Some children can act very seductively.
- A lot of times, sexual assaults on children are not planned . . . they just happen.
- A lot of times, kids make up stories about people molesting them because they want to get attention.
- Some young children are much mor[e] adult-like than other children.
- If most child molesters hadn't been sexually abused as a child, then THEY probably would never have molested a child.
- If a woman does not resist strongly to sexual advances, she is probably willing to have sex.
- Women often falsely accused men of rape.
- Victims of rape are usually a little bit to blame for what happens.
- Before the police investigate a woman's claim of rape, it is a good idea to find out what she was wearing, if she had been drinking and what kind of person she is.
- The reason a lot of women say "no" to sex is because they don't want to seem loose.
- Many women have a secret desire to be forced into having sex.
- I believe any woman can prevent herself from being raped if she really want[s] to.

Defendant also endorsed the following statements regarding Attitudes About Sexual Behavior, as true:

I know what is okay and not okay to do sexually; I don't think having sex is ever wrong when you care about the person; girls really want you to have sex with them, if you don't, they think something is wrong with you; getting someone to be sexual with you is a good way to tell that they really like you; when someone has sex with you, they care about you.

After hearing all the testimony and reviewing the evidence, the trial court made the following findings:

Well, in this case the [c]ourt has reviewed and considered the [PSR]; the psychosexual risk assessment; and the testimony of witnesses who testified both as to the victim, the victim's mother, and [Defendant's] sister.

In determining the sentence, the [c]ourt is directed by statute to consider any mitigating factors, which might exist under [Tennessee Code Annotated section] 40-35-113. And the [c]ourt finds no mitigating factors.

. . . .

Now, as I stated earlier, the [c]ourt finds no mitigating factors.

Enhancement factors are listed in [Tennessee Code Annotated section] 40-35-114, Subsection (1). The [c]ourt finds the Defendant has a previous history of criminal conviction or criminal behavior, in addition to those necessary to establish the appropriate range.

And . . . that the offense involved one or more victims.

The [c]ourt has considered the [PSR], which indicates—and it's no secret that [Defendant] has had considerable prior experience in the Department of [Correction].

The psychosexual risk assessment carries some provisions in it that are—or some findings that are quite concerning.

The bottom of Page [fifteen], "[Defendant] is at risk for engaging in sexual misconduct and his risk is above average according to empirical[ly] supported static factors."

- 6 -

Page [nine], a little past midway, Dr. Moore asked [Defendant] a question, "Do you think you have a problem?"

His response, "More likely I like sex. I like women."

When asked about offending against children and needing treatment, he said, "I think I need treatment of some kind. The problem with kids per se is sexual feelings."

And then onto the listing of his responses to the questionnaire on Page [eleven] are also quite concerning. Statements such as; "Some children can act very seductively."

The last statement, "I believe any woman can prevent herself from being raped, if she really wants to."

Based upon consideration of the enhance[ment] factors, I'm going to find a sentence then in Count One for a term of six years. And in Count Five, likewise, for a term of six years.

The next consideration is the manner of service. Quite frankly, [Defendant's] record is indicative of circumstances that would establish that he is not a suitable person for probation.

His history, circumstances surrounding the offense, and so far as rehabilitation, I do not find that probation would be appropriate.

Next is the issue of whether such sentences would run concurrent or consecutively. The [c]ourt is directed then to look at [Tennessee Code Annotated section] 40-35-115, dealing with multiple convictions.

Under [Tennessee Code Annotated section] 40-35-115, . . . Subsection ([b]) it provides that the [c]ourt may order sentences to run consecutively, if the [c]ourt finds by a preponderance of the evidence that—and that's simply the greater weight of the evidence.

Subsection [(b)](2), the [d]efendant is an offender whose record of criminal activity is extensive. The [c]ourt find[s] Subsection (2) to be applicable.

And in Subsection [(b)](5), the [d]efendant is convicted of two or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the [d]efendant and victim or victims; the time span of the [d]efendant's undetected sexual activity; the nature and scope of the sexual acts; and the extent of the residual, physical, or mental damage to the victim or victims. The [c]ourt finds Subsection (5) to be applicable.

Furthermore, in consideration of the findings [set] forth in *State v. Wilkerson* [905 S.W.2d 933 (Tenn. 1995)], wherein the [s]upreme [c]ourt held that imposition of consecutive sentences on an offender found to be a dangerous offender requires, in addition to application of general [principles] of sentencing, a finding that an extended sentence is necessary to protect public interest against further criminal conduct by the [d]efendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed.

These offenses were committed against children. The [c]ourt finds that based upon the factors set forth in *Wilkerson* that the sentences imposed—that they will run consecutively.

The trial court sentenced Defendant as a Range I, standard offender to six years imprisonment on each count, to be served consecutively to each other, with a release eligibility of thirty percent. Defendant's timely appeal followed.

## II. Analysis

On appeal, Defendant argues that the trial court abused its discretion in imposing the maximum sentence of six years on each count, imposing consecutive sentences, and denying alternative sentencing. Defendant argues "the trial court did not place adequate findings on the record to explain its sentencing decisions with respect to the length, the consecutive nature of the sentences, and the manner of service." Thus, Defendant argues, the trial court's findings are not entitled to a presumption of reasonableness. The State argues that the trial court acted within its discretion.

We review the length and manner of service of within-range sentences imposed by a trial court under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn.

2010). Our supreme court has stated that "the abuse of discretion standard of appellate review accompanied by a presumption of reasonableness applies to all sentencing decisions." *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014) (citing *State v. Pollard*, 432 S.W.3d 851, 864 (Tenn. 2013)). This standard also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Nevertheless, to be afforded deference on appeal, the trial court must "place on the record any reason for a particular sentence." *Bise*, 380 S.W.3d at 705. There is no presumption of reasonableness when the trial court fails to consider and weigh the applicable common law factors. *King*, 432 S.W.3d at 327-28; *Caudle*, 388 S.W.3d at 279. But as this court has observed:

> [T]rial courts need not comprehensively articulate their findings concerning sentencing, nor must their reasoning be "particularly lengthy or detailed." *Bise*, 380 S.W.3d at 706. Instead, the trial court "should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decision[-]making authority." *Id.*

*State v. Sheets*, No. M2022-00538-CCA-R3-CD, 2023 WL 2908652, at \*4 (Tenn. Crim. App. Apr. 12, 2023) (alterations in original), *no perm. app. filed*.

In short, we will uphold the trial court's sentencing decision on appeal "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. A defendant bears the burden of proving that the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

## 1. Length of Sentence

The trial court imposed the maximum Range I sentence of six years for each of the Defendant's convictions for attempted aggravated sexual battery. In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the PSR; (3) the principles of sentencing and arguments regarding sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts regarding sentencing practices for similar offenses in Tennessee; (7) any statement the defendant

made on the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the Tennessee Department of Correction and contained in the PSR. Tenn. Code Ann. § 40-35-210(b); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

If the "trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails. . . . [And] 'our review is simply de novo.'" *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2007) (first citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992); and then quoting *State v. Pierce*, 138 S.W.3d 820, 827 (Tenn. 2004)). Still, the "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. In addition, the "weighing of various mitigating and enhancement factors has been left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. The sentence imposed should be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4). "Appellate courts may not disturb the sentence even if we had preferred a different result." *State v. Burns*, No. W2021-00939-CCA-R3-CD, 2023 WL 334659 at *7 (Tenn. Crim. App. Jan. 20, 2023) (citing *Carter*, 254 S.W.3d at 346), *perm. app. denied* (Tenn. Apr. 17, 2023).

First, Defendant argues, and the State concedes, the trial court misapplied one enhancement factor—that "the offense involved more than one (1) victim." Tenn. Code Ann. § 40-35-114(3). Defendant was indicted on eight separate counts. Per the plea agreement, all counts but Count 1 and Count 5 were dismissed. Count 1 identified V.G. as sole the victim, and Count 5 identified I.G. as the sole victim. We have held that a trial court errs in applying the multiple-victims enhancement factor when "each offense for which [a] defendant [is] charged involve[s] only one victim" and "there [are] separate sentences for each victim." *State v. Clabo*, 905 S.W.2d 197, 206 (Tenn. Crim. App. 1995); *see also State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002) ("[T]here cannot be multiple victims for any one offense of aggravated assault committed against a specific, named victim."). Thus, we agree with both parties that the trial court erred in applying the multiple-victims enhancement factor; however, our analysis does not end there because the "misapplication of an enhancement or mitigating factor does not invalidate the sentence." *See Bise*, 380 S.W.3d at 706.

In light of the foregoing, Defendant asserts that "[a]bsent that [multiple-victims] factor, the trial court could only enhance [Defendant's] sentence based upon his prior criminal history, and that factor alone did not justify imposing the maximum sentence of six years on both counts." Contrary to Defendant's argument, however, the weight to give an enhancement factor "has been left to the trial court's sound discretion." *Carter*, 254

S.W.3d at 345. Thus, we disagree with Defendant's argument that one enhancement factor, alone, does not justify imposing the maximum sentences here. *See State v. Rollins*, No. E2022-00890-CCA-R3-CD, 2023 WL 4078700, at *5 (Tenn. Crim. App. June 20, 2023) ("The application of a single enhancement factor can justify an enhanced sentence." (citation and internal quotation marks omitted)), *perm. app. denied* (Tenn. Oct. 13, 2023).

Defendant then argues the trial court abused its discretion in failing to apply any mitigating factors. Defendant argues, "[a]t a minimum, the trial court should have considered [Defendant's] age as mitigating factor." Defendant also argues that his employment, caregiving, and health issues "should have been considered under the catch-all factor" in Tennessee Code Annotated section 30-35-113(13). Moreover, Defendant again argues that the trial court did not articulate the reasons sufficiently for its decisions to be afforded deference on appeal.

The State essentially argues that none of the mitigation proof is particularly strong, nor does it entitle Defendant to leniency in his sentence. The State also argues that Defendant's proof was uncorroborated. The State offers no authority on this point, and we are unaware of any precedent that requires corroboration. The State also asserts that because the trial court acknowledged it is statutorily required to consider mitigating factors, it satisfied its duty to articulate its reasoning when it found no applicable mitigating factors.

We recognize that a trial court wields broad discretion in its sentencing determinations. Our supreme court has noted:

> [A]lthough we emphasize that there are no "magic words" that trial judges must pronounce on the record, it is also critical that, in their process of imposing [a] sentence, trial judges articulate fully and coherently the various aspects of their decision as required by our statutes and case law. As we recently reiterated, "our ruling in *Bise* specifically requires trial courts to articulate the reasons for the sentence in accordance with the purposes and principles of sentencing in order for the abuse of discretion standard with a presumption of reasonableness to apply on appeal." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013) (citing *Bise*, 380 S.W.3d at 698-99).

*State v. Trent*, 533 S.W.3d 282, 292 (Tenn. 2017). Thus, a trial court must articulate its findings regarding enhancement and mitigating factors, and address the weight given to each factor, for its findings to be in line with the purposes and principles of sentencing. *See State v. Jackson*, No. W2021-00208-CCA-R3-CD, 2022 WL 370090, at *6 (Tenn. Crim. App. Feb. 8, 2022), *no perm. app. filed*; *cf. Bise*, 380 S.W.3d at 706 (these findings need not be "particularly lengthy or detailed"). A trial court's duty to state on the record the sentencing principles it has considered and its reasons for the sentence imposed is to

"facilitate meaningful appellate review." *State v. Moreno*, No. W2023-00316-CCA-R3-CD, 2024 WL 836112, at *4 (Tenn. Crim. App. Feb. 28, 2024) (citing *Bise*, 380 S.W.3d at 705). Moreover, the trial court is given great deference in weighing the enhancement and mitigating factors, unless the trial court "wholly departed" from the Sentencing Act. *See* Tenn. Code Ann. § 40-35-210(d)-(f); *Carter*, 254 S.W.3d at 342-43; *Moreno*, 2024 WL 836112, at *5. In light of this great deference, we "will uphold the trial court's sentencing decision 'so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute.'" *Moreno*, 2024 WL 836112, at *4 (quoting *Bise*, 380 S.W.3d at 709-10).

Here, we conclude that the trial court did not abuse its discretion in determining the length of Defendant's sentences. The trial court expressly recognized its statutory duty to consider mitigating factors under Tennessee Code Annotated section 40-35-113 and stated it "finds no mitigating factors." Given the substantial deference the law gives trial courts, a fair reading of the court's statements implies that it acknowledged Defendant's proposed mitigating factors but game them no weight. While we recognize that the trial court could have been more explicit and made more detailed findings as to why it was discounting Defendant's proposed mitigating factors, the trial court nevertheless clearly understood the "purposes and principles" of sentencing as demonstrated by its detailed findings of enhancement factors and its repeated references to its finding that there were no mitigating factors. *See Bise*, 380 S.W.3d at 709-10. In doing so, the trial court did not "wholly depart[]" from the Sentencing Act, and the entirety of its statements at sentencing facilitated our "meaningful appellate review." *See* Tenn. Code Ann. § 40-35-210(d)-(f); *Carter*, 254 S.W.3d at 342-43; *Moreno*, 2024 WL 836112, at *4-5 (citing *Bise*, 380 S.W.3d at 705). When viewed within the context of the entire sentencing hearing, the trial court's limited statements on Defendant's proposed mitigating factors do not remove our deferential review. And, as noted, misapplication of one enhancement factor does not "invalidate the sentence imposed unless the trial court wholly departed" from the Sentencing Act. *Bise*, 380 S.W.3d at 706. We conclude the trial court did not abuse its discretion in sentencing Defendant to the maximum sentences on the two counts of conviction.

2. Consecutive Sentencing

Under Tennessee Code Annotated section 40-35-115, a trial court has discretion to order a defendant convicted of more than one offense to serve their sentences consecutively if it finds at least one of the statutory grounds to be present. *Pollard*, 432 S.W.3d at 859-60; *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013). Relevant to this case, a trial court may order consecutive sentencing when the "defendant is an offender whose record of criminal activity is extensive," the defendant is a "dangerous offender," or when the defendant is convicted of two or more offenses involving "sexual abuse of a minor with

consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage" to the victims. Tenn. Code Ann. § 40-35-115(b)(2), (4), (5). Our supreme court has held that trial courts should consider the following non-exhaustive factors in construing whether a defendant's criminal record is "extensive" under Tennessee Code Annotated section 40-35-115(b)(2):

> (1) The amount of criminal activity, often the number of convictions, both currently before the trial court for sentencing and prior convictions or activity;

> (2) The time span over which the criminal activity occurred;

> (3) The frequency of criminal activity within that time span;

> (4) The geographic span over which the criminal activity occurred;

> (5) Multiplicity of victims of the criminal activity; and

> (6) Any other fact about the defendant or circumstance surrounding the criminal activity or convictions, present or prior, that informs the determination of whether an offender's record of criminal activity was considerable or large in amount, time, space, or scope.

*State v. Perry*, 656 S.W.3d 116, 129 (Tenn. 2022) (citations and footnotes omitted). Moreover, "prior convictions or criminal activity may demonstrate 'a consistent pattern of operating outside the confines of lawful behavior' and provide some stronger measure of justification for finding that a defendant is an offender whose record of criminal activity is extensive." *Id.* at 131 (quoting *Dickson*, 413 S.W.3d at 748).

A trial court also may order multiple sentences to run consecutively when the defendant is a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. *See* Tenn. Code Ann. § 40-35-115(b)(4). When the court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it must also find that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offense committed. *See id.*; *State v. Lane*, 3 S.W.3d 456, 460-61 (Tenn. 1999); *State v. Wilkerson*, 905 S.W.2d 933, 937-38 (Tenn. 1995).

We review the trial court's order of consecutive sentencing under the same *Bise* abuse of discretion with a presumption of reasonableness standard by which we review its other sentencing determinations. *See Pollard*, 432 S.W.3d at 860.

Here, the trial court cited three separate grounds for imposing consecutive sentences. First, it addressed Tennessee Code Annotated section 40-35-115(b)(5), read the statutory language into the record, and stated, "The [c]ourt finds Subsection (5) to be applicable." The record supports the court's conclusion that the subsection applied. Defendant was convicted of two offenses involving the sexual abuse of minors. *See* Tenn. Code Ann. § 40-35-115(b)(5). Also, the aggravating circumstances arising from the relationship between Defendant and the victims are clear—Defendant, whom the victims called "Uncle Turtle," had a family relationship with the victims by marriage. *See id.* The time span of Defendant's undetected sexual activity lasted roughly two years. *See id.* The nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victims is extensive—he groped and molested both victims multiple times. *See id.* V.G. became reserved, her grades slipped, and she was scared to talk about the abuse, and I.G. refused to talk about anything regarding Defendant. *See id.* Thus, the trial court did not abuse its discretion when it found that Code section 40-35-115(b)(5) applied.

Second, the trial court relied upon Tennessee Code Annotated section 40-35-115(b)(2) and found Defendant's criminal activity to be extensive. Defendant has two prior convictions for sexually abusing children: he sexually assaulted a nine-year-old male relative, and while on parole for the first assault, Defendant sexually assaulted a six-year-old girl. Defendant also was convicted of violating the sexual offender registry. Defendant's past criminal offenses clearly demonstrate a "consistent pattern of operating outside the confines of lawful behavior." *Dickson*, 413 S.W.3d at 748. Even after Defendant spent decades in prison for the first two sexual abuse offenses, he proceeded to sexually abuse V.G. and I.G. for a period lasting over two years. This abuse was not limited to one single occasion but happened multiple times against the two children. Thus, the trial court did not abuse its discretion in finding subsection (2) applicable. *Perry*, 656 S.W.3d at 129.

Third, under Tennessee Code Annotated section 40-35-115(b)(4) and the *Wilkerson* analysis, the trial court noted that it must find "an extended sentence is necessary to protect public interest against further criminal conduct" by Defendant and that "the consecutive sentences must reasonably relate to the severity of the offenses committed." The trial court incorrectly stated the law and the analysis it was required to conduct. *See Wilkerson*, 905 S.W.2d at 938. The dangerous offender classification requires the defendant's behavior to indicate little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. *See* Tenn. Code Ann. § 40-35-115(b)(4). While, the trial court found that consecutive sentences were reasonably related to the severity of

Defendant's offenses that were committed against children, there is no evidence that Defendant had a lack of regard for human life. Thus, the trial court erred in applying subsection (4). *See id.*

In any event, we conclude that the trial court did not abuse its discretion in ordering Defendant to serve his sentences consecutively. The trial court's order is supported by its finding of the two factors under Code section 40-35-115(b)(2) and (5). Despite erring in applying subsection (4), a trial court need only find at least one of the statutory grounds to be present to order Defendant's sentences to be run consecutively. *See Pollard*, 432 S.W.3d at 859-60; *Dickson*, 413 S.W.3d at 748. As such, any such error was harmless, and Defendant is not entitled to relief on this issue. *See* Tenn. R. App. P. 36(b).

### 3. Alternative Sentencing

Generally, probation is available to a defendant whose actual sentence imposed is ten years or less, and his or her underlying offense is not excluded by law. Tenn. Code Ann. § 40-35-303(a). However, no criminal defendant is entitled to a presumption of probation, and no defendant is automatically entitled to probation as a matter of law. *Carter*, 254 S.W.3d at 347; *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). The defendant must prove his suitability for alternative sentencing options. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)). Our supreme court has held that "[t]he guidelines applicable in determining whether to impose probation are the same factors applicable in determining whether to impose judicial diversion." *Trent*, 533 S.W.3d at 291 (quoting *State v. Scott*, No. M2010-01632-CCA-R3-CD, 2011 WL 5043318, at *11 (Tenn. Crim. App. Oct. 24, 2011)). A trial court should consider the following factors when determining whether probation is appropriate: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value. *Id.* (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)). When a trial court fails to consider and weigh these factors, the presumption of reasonableness does not apply, and we "may either conduct a de novo review or, if more appropriate under the circumstances, remand the issue for reconsideration." *King*, 432 S.W.3d at 328.

In determining whether incarceration is an appropriate sentence, the trial court should also consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A)-(C).

The trial court's statements on this matter are sparse and vague. In contrast, "*Bise* specifically requires trial courts to articulate the reasons for the sentence in accordance with the purposes and principles of sentencing in order for the abuse of discretion standard with a presumption of reasonableness to apply on appeal." *Pollard*, 432 S.W.3d at 861 (citing *Bise*, 380 S.W.3d at 698-99). "[T]rial courts [are] still required . . . to 'place on the record . . . the reasons for the sentence . . . .'" *Id.* (quoting Tenn. Code Ann. § 40-35-210(e)). The following statements are the only time the trial court addressed probation in the record: "The next consideration is the manner of service. Quite frankly, [Defendant's] record is indicative of circumstances that would establish that he is not a suitable person for probation. His history, circumstances surrounding the offense, and so far as rehabilitation, I do not find that probation would be appropriate."

This cursory explanation does not meet the standard set forth in *Bise,* which requires a trial court to specifically articulate the reasons for its decision regarding whether alternative sentencing is appropriate. *See Bise*, 380 S.W.3d at 698-99. The trial court stated that Defendant's "record is indicative of circumstances" that would weigh against a sentence of probation. It also stated Defendant's "history, circumstances surrounding the offense, and so far as rehabilitation, I do not find that probation would be appropriate." Yet, the trial court did not articulate what in Defendant's history, the circumstances of his offense, and rehabilitation led to its decision. In other words, the trial court should have said why it decided those reasons weighed against granting probation. *See Bise*, 380 S.W.3d at 705-06; *see also Jackson*, 2022 WL 370090, at \*6 (explaining that our supreme court and this court have held "that more than just lip service must be paid to the purposes and principles of sentencing" to maintain the presumption of reasonableness). We agree with Defendant that the trial court failed to sufficiently place its findings on the record to satisfy our review; thus, our review of the trial court's decision in this context is not accompanied by a presumption of reasonableness. That said, we find the record to be adequate for our de novo review.

## a. Defendant's Amenability to Correction

When determining a defendant's amenability to correction, a court may consider, among other things, "(1) the defendant's acceptance of responsibility and remorse; (2) the defendant's compliance with release orders . . . ; (3) the results of a validated risk and needs assessment or a psychosexual evaluation; and (4) the defendant's drug usage and whether the defendant has sought treatment for a substance use addiction." *State v. Wells*, No. M2022-01561-CCA-R3-CD, 2023 WL 8437067, at *12 (Tenn. Crim. App. Dec. 5, 2023) (citing *Sheets*, 2023 WL 2908652, at *8).

We conclude from the record that Defendant did not accept responsibility or express remorse for his actions. Defendant did not plead guilty; he stated only that he entered best interest pleas because he believed he would not get a fair trial. While Defendant did attempt suicide, he only did so after police officers had begun their investigation, not after he had molested the victims. Moreover, Defendant's expressed and adopted statements from his psychosexual evaluation indicate his lack of remorse, including: "The problem with kids per se is sexual feelings"; "Some children can act very seductively"; and "I believe any woman can prevent herself from being raped, if she really wants to."

We also conclude that Defendant has shown to be noncompliant with release orders and that this factor weighs against his amenability to correction. Defendant has a history of violating release orders. He violated his parole from a sexual offense by sexually assaulting another child within a year of his release. Defendant also was convicted of violating the sex offender registry, a registry that exists to monitor and track sexual offenders.

The PSR indicates Defendant has a moderate risk to reoffend. The psychosexual evaluation concluded he is "at risk for engaging in sexual misconduct, and his risk is *above average* according to empirically supported static factors. Dynamic factors enhance his risk somewhat and his overall risk considering changeable factors is *well above average*." This factor weighs against Defendant.

Defendant also has a cannabis use problem. He stated he first used marijuana in sixth grade and has continued smoking. Although he said he could stop if he was given probation, he also stated he has never been to a treatment program. We see no evidence he voluntarily entered any such program. We conclude that this factor also weighs against Defendant.

For these reasons, we conclude that Defendant has failed to show that he is amenable to correction. *Wells*, 2023 WL 8437067, at *12.

## b. Circumstances of the Offense

This court has held that "the circumstances of the offense may alone serve as the basis for denial" of alternative sentencing. *Id.* at *14 (citing *State v. Kyte*, 874 S.W.2d 631, 634 (Tenn. Crim. App. 1993)). "For this provision to apply, the circumstances of the offense 'as committed, must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring probation.'" *State v. Fields*, 40 S.W.3d 435, 441 (Tenn. 2001) (first quoting *State v. Cleaver*, 691 S.W.2d 541, 543 (Tenn. 1985), *abrogated by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000); and then citing *State v. Harley*, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)); *State v. Travis*, 622 S.W.2d 529, 534 (Tenn. 1981).

Here, Defendant moved in with family, and Defendant was, at times, a caretaker for the victims, who called him "Uncle Turtle." Defendant sexually abused both underage victims when he should have been someone they could trust. Defendant was more than fifty years old while the victims were in their pre-teens or younger while he continued his abuse over several years. He attempted to bribe V.G. to avoid being detected. Given Defendant's prior criminal history of underage sexual offenses including prison time, Defendant was well aware of the consequences and continued abusing the children anyway. We conclude Defendant's actions are especially horrifying, shocking, reprehensible, and offensive. *See Fields*, 40 S.W.3d at 441.

We conclude that the egregious circumstances of the offenses weigh heavily against Defendant, and alone justify the denial of probation or any other alternative sentence. *See Kyte*, 874 S.W.2d at 634.

## c. Criminal Activity

A "trial court may consider convictions and unconvicted criminal behavior." *Wells*, 2023 WL 8437067, at * 14 (citing *State v. Beverly*, 894 S.W.2d 292, 293-94 (Tenn. Crim. App. 1994)). Echoing our consecutive sentencing analysis under Tennessee Code Annotated section 40-35-115(b)(2), Defendant's criminal record is extensive. Defendant has two prior convictions for sexually abusing children and one for violating the sexual offender registry. In addition, he has a long history of substance use with knowledge that it is illegal. *See, e.g.*, *State v. Pinhal*, No. M2019-01516-CCA-R3-CD, 2020 WL 3966843, at *10 (Tenn. Crim. App. July 14, 2020) (affirming denial of an alternative sentence, in part, when "[t]he Defendant, likewise, admitted long-term drug and alcohol abuse. She admitted to drinking and using marijuana beginning at age twelve or thirteen."), *perm. app. denied* (Tenn. Nov. 12, 2020). This factor weighs against Defendant.

### d. Social History

In weighing a defendant's social history, a court should consider the following list of non-exhaustive factors: "the defendant's age, general reputation, education, employment, home environment, community involvement, and family relationships and responsibilities." *Wells*, 2023 WL 8437067, at *15 (first citing *King*, 432 S.W.3d at 328; and then citing *State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993)). At the time of sentencing, Defendant was fifty-nine years old and he will be seventy-two when he is released from custody. There was no evidence in the record of Defendant's general reputation. Regarding Defendant's family relationships and responsibilities, and his home environment, Defendant does have some family support and a place to stay, and he did care for one of his ill older sisters as shown through his sister's testimony. Yet, Defendant has a history of sexually abusing minors who are his relatives, including those with whom he lived in this case. Defendant dropped out of high school in the eleventh grade, but obtained his GED while in prison in 1991. Defendant did construction work with his older brothers. There is nothing in the record that suggests Defendant had any community involvement. Considering the foregoing evidence, we conclude Defendant's social history weighs against granting alternative sentencing.

### e. Physical and Mental Health

A court should consider a defendant's physical and mental health, but this evidence "weighs neutrally where nothing in the record 'reflects anything of note regarding [a] [d]efendant's mental and physical health. *Sheets*, 2023 WL 2908652, at *11 (first quoting *State v. Dycus*, 456 S.W.3d 918, 931 (Tenn. 2015); and then citing *King*, 432 S.W.3d at 328). Here, Defendant reported his physical and mental health were "fair to good." Defendant previously has not sought treatment from a mental health professional and the PSR scored Defendant's mental health needs as "low" at zero percent. As in *Sheets*, because Defendant has demonstrated the physical and mental ability to comply with the conditions of sentencing, we conclude that this factor weighs neutrally.

### f. Deterrence

This factor "examines the deterrence value to the accused as well as others." *Wells*, 2023 WL 8437067, at *16. *See also* Tenn. Code Ann. § 40-35-103(1)(B). Unlike an accident, where deterrence serves little value, Defendant is a repeat child sexual abuser and has shown little, if any, remorse for his actions. *State v. Hooper*, 29 S.W.3d 1, 11 (Tenn. 2000) (noting that intentional conduct is the type of conduct that is more likely to be deterred). In fact, the statements he made and agreed with in his psychosexual evaluation indicate that victims of sexual offenses may be the ones at fault instead of the perpetrator. Although Defendant previously has been confined for child sex offenses, we conclude that

- 19 -

Defendant's further confinement is necessary to serve as specific deterrence from future his criminal behavior. His previous time on parole did not accomplish this purpose. *See id.* at 12 (noting that "[r]epeated occurrences of the same type of criminal conduct by a defendant generally warrant a more emphatic reminder that criminal actions carry consequences."). We also conclude that Defendant's confinement will serve as a general deterrent to others who may commit sexual offenses against children, in that these are serious crimes for which prison is well warranted. This factor weighs heavily against alternative sentencing for Defendant.

## g. Statutory Considerations

We also determine that confinement is necessary to protect society from Defendant who has a long history of child sex offenses. Tenn. Code Ann. § 40-35-103(1)(A). Defendant has been convicted of multiple child sex offenses against four separate children spanning a twenty-three-year period. Confinement is necessary to avoid depreciating the seriousness of this offense and confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses. *Id.* § 40-35-103(1)(B). Defendant's sexual abuse is self-evident; he groped and molested both victims multiple times. V.G. became reserved, her grades slipped, and she was scared to talk about it. Though I.G.'s mental health made it difficult to determine the impact on her, she nevertheless refused to talk about anything regarding Defendant. Finally, we also find that measures less restrictive than confinement have not been successful with Defendant. *See id.* § 40-35-103(C). Though not recent, Defendant has sexually abused a child victim while on parole for aggravated sexual battery of another child. Moreover, Defendant has been convicted of violating the sexual offender registry.

After our de novo review, we conclude that several factors weigh against granting alternative sentencing. These include the Defendant's lack of amenability to correction, the circumstances of the offense, his criminal history, the deterrent value to him and others, his social history, and other statutory considerations as well. His physical and mental health weigh neutrally and no factor weighs in his favor. Accordingly, we determine that Defendant is not suitable for alternative sentencing.

## III. Conclusion

After review of the record and the applicable law, we conclude that the trial court did not abuse its discretion in determining the length of Defendant's sentences and by imposing consecutive sentences. After our de novo review, we affirm the denial of alternative sentencing. Accordingly, we affirm the judgments of the trial court.

_____
MATTHEW J. WILSON, JUDGE